BARRY, Judge.
Joseph Bonomolo appeals a $8,275.00 judgment which is based on alleged charges at Coleman E. Adler & Sons’ Jewelry Store.
Adler’s suit is on Bonomolo’s open account under La.R.S. 9:2781 and for recognition of a vendor’s lien. Adler’s alternatively pleaded that its employee, Schaffer Mickal, exchanged merchandise with Bono-molo for personal limousine services with *836 out Adler’s knowledge and Bonomolo is liable since he obtained merchandise without payment. Bonomolo answered that limousine services had been provided to Adler’s, not Mickal, and that the claim had prescribed.
The trial court awarded the value of a $4,150.00 diamond necklace and a $4,125.00[1] Rolex watch (minus sales tax) and legal interest from judicial demand. Bonomolo’s exception of prescription was properly overruled because the dates of the transactions were not proven with reasonable certainty.
William Kearney, Vice President and Treasurer of Adler’s, testified that Bono-molo signed an open account agreement in November, 1979 which provides for interest on any unpaid balance and reasonable attorney’s fees if the account was not paid. He identified copies of invoices for the necklace and watch. He said Adler’s used Bonomolo's limousine service and identified several bills which were paid with Adler’s checks. Kearney stated that Schaffer Mickal is a brother-in-law of Coleman Adler, the store’s owner, and had been a salaried employee until the end of 1982.
Kearney noted that the rubber stamp date on a sales slip reflects when the transaction was recorded, not the date of the sale. The invoice date for the necklace is October 10 with no year stated. Since the stamp date is August 5, 1982 Kearney presumed the ticket was written on October 10, 1981. The handwritten date on the watch invoice is April 5. Since the stamp date is August 5, 1982 he presumed the transaction was on April 5, 1982.
Kearney pointed out that both items were charged to Bonomolo based on memo tickets. The necklace and watch had been taken out of inventory by Mickal sometime before the dates they were placed on Bono-molo’s account. Normally, the value of such merchandise (removed for various reasons) was entered on memo tickets by the salesman who then became responsible for its value. On August 5, 1982 Mickal turned in the necklace and watch memos to be charged to Bonomolo’s account. The first bill would have been sent to Bonomolo at the end of August, 1982. Kearney testified that he did not know about any relationship between Mickal and Bonomolo until long after Bonomolo’s account was delinquent.
Bonomolo testified that his company provided limousine services to Adler’s for which he sent invoices and was paid by the store. He claims other limos had been paid for with store merchandise after bartering for the services. Bonomolo claims all of the limousines serviced Adler’s, not Mickal personally.
Bonomolo argues the ongoing trade-out arrangement included the necklace and watch and emphasizes he never intended to pay cash for either item. He said Mickal paid for some services in cash, but he had no records pertaining to Adler’s or Mickal. He claims he is owed about $12,000, but he did not sue Mickal or Adler’s.
Bonomolo testified the watch had been stolen and he was uncertain whether he had the necklace. He claimed Adler’s never mailed a statement to him and the first notice of the claimed charges was an attorney’s demand letter, which Mickal told him to ignore.
Mickal, a salesman at Adler’s since 1964, testified that when he ordered a limousine for Adler’s, Bonomolo billed Adler’s and was paid by its check. He admitted ordering numerous limousines from Bonomolo for his personal use. These charges were paid for with Adler’s merchandise which Bonomolo had selected.
Mickal said it was customary for Bono-molo to select jewelry and he would write a memo ticket to cover the merchandise and eventually he (Mickal) would pay Adler’s. The tickets were placed in the memo box (for jewelry sold or out on consignment) and Mickal admitted he was liable to the store from that point. He conceded he had a running account with Adler’s as an inde *837 pendent sales representative and owed about $50,000 at the time of trial.
Mickal felt the limousine charges on Bo-nomolo’s statements were worth far less than the watch and necklace. It was only after he and Bonomolo could not agree on the values that on August 5, 1982 Mickal turned in the two memo tickets to charge Bonomolo’s account.
Mickal stated Bonomolo’s invoice to him totaled about $12,000, but the merchandise Bonomolo received was worth over $20,000. The limo invoice shows numerous overnight uses which indicates the service was for personal use.
Mickal testified he never told Bonomolo about his arrangement with Adler’s, nor did he claim any authority to act as Adler’s representative.
The trial court factually concluded:
This agreement worked satisfactorily for approximately one and one-half years until Mickal concluded that the value of the limousine services, rendered by Bonomo-lo, was less than the value of the jewelry transferred.
Unable to resolve this dispute, on August 5, 1982, Mickal transferred from the memo tickets, to Adler’s regular completed sales, billing and collection process, two articles of jewelry previously consigned to Bonomolo.
Bonomolo knew or should have known, based on the difference between the billing procedure used by Adler’s and those used by Mickal individually, that the limousine services for Mickal formed part of a contractural [sic] relationship between Mickal personally and Bonomolo.
Adler’s original suit on an open account was amended when the “trade-out” agreement was discovered. The amendment notes the arrangement between Bonomolo and Mickal and alleges Bonomolo knew he was not providing services to Adler’s and therefore owes the money since he obtained Adler’s merchandise without paying for it.
We agree with the trial court that no contractual relationship existed between Adler’s and Bonomolo. Nor do we find an “exchange” between those two parties. When the necklace and watch were given to Bonomolo, Mickal assumed full liability to Adler’s for payment as he had done in the past for other merchandise. The net result was that Mickal charged the merchandise to himself as far as Adler’s was concerned. That was a common practice used by Mickal and other salesmen at Adler’s. We find no issue as to Mickal’s actual or apparent authority to bind Adler’s since Mickal owned the jewelry.
It was never Bonomolo’s intent to pay Adler’s for the jewelry. As far as this record shows neither Mickal or Bonomolo concocted their arrangement to defraud Adler’s. There is no privy between Adler’s and Bonomolo. Mickal assumed ownership of the jewelry, then attempted to avoid his debt by transferring his account to Bono-molo’s. Mickal is the culprit (as far as Adler’s is concerned) and is liable for the jewelry.
Bonomolo had no reason to believe the merchandise allegedly belonged to Adler’s and the theory of unjust enrichment is not applicable. Whether the value of Bonomolo’s limousine services to Mickal equalled the amount of Mickal’s debt to Adler’s is between Mickal and Bonomolo. Adler’s should not recover here for a debt owed by Mickal.
The judgment is reversed.
REVERSED.

. Although the petition notes the value of the watch to be $4,120, the sales slip, Plaintiffs Exhibit 4, shows it as $4,125.